TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
DAVID T. RYAN (Cal. Bar No. 295785)
Assistant United States Attorney
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4491
     Facsimile: (213) 894-2927
     E-mail:    David.ryan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-255-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| CARL DE VERA BENNINGTON, | Hearing Date: April 14, 2021 |
| Defendant. | Location:    Courtroom of the Hon. Dolly M. Gee |

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney David T. Ryan, hereby files its Sentencing Position.

//
//
//
//
//

This Sentencing Position is based upon the attached memorandum of points and authorities, the Presentence Investigation Report, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 30, 2021                     Respectfully submitted,

                                          TRACY L. WILKISON
                                          Acting United States Attorney

                                          CHRISTOPHER D. GRIGG
                                          Assistant United States Attorney
                                          Chief, National Security Division


                                          _____/s/_____
                                          DAVID T. RYAN
                                          Assistant United States Attorney

                                          Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.   INTRODUCTION**

3    Defendant Carl Bennington ("defendant") sent hundreds of

4  messages over multiple years to teenage girls and young women

5  demanding that they engage in sex acts with him and threatening to

6  commit acts of physical and sexual violence against them when they

7  refused to submit to his demands.  Defendant's messages were

8  consistent with the ideology he promoted online that men should seek

9  to dominate women, and that women had become arrogant, men had become

10 weak, and women needed "to be put back in their fucking place."  For

11 his harassment of the two victims identified in this case, defendant

12 pleaded guilty to two counts of Cyberstalking, in violation of 18

13 U.S.C. §§ 2261A(2), 2261(b)(5).  (Dkts. 39, 45.)

14    While engaged in this criminal conduct, defendant also

15 experienced significant mental health issues, causing him to suffer

16 paranoid delusions and hallucinations, resulting in his involuntary

17 commitment to hospitals on two occasions pursuant to California

18 Welfare and Institutions Code 5150, and ultimately rendering him

19 homeless.  Defendant's mental health issues appear to have played a

20 role in aggravating defendant's criminal conduct, and addressing

21 those issues will be critical to protecting the victims in this case

22 as well as the general public from further crimes of the defendant

23 after his release from imprisonment.

24    For these reasons, and consistent with its obligations set forth

25 in the Plea Agreement, the government joins in the recommendation of

26 the United States Probation Office ("USPO") that the Court impose a

27 term of imprisonment of 21 months — which represents a variance from

28 the Guidelines — followed by three years of supervised release with

the intensive conditions related to supervision and mental health treatment detailed by the USPO in its recommendation.  (See Dkt. 47.)

## II.  STATEMENT OF FACTS

### A.    Defendant Harassed and Threatened Victim 1

Defendant began contacting Victim 1 online in 2013 when she was approximately 16 years old.  (PSR ¶ 9.)  Over the next several years, defendant would repeatedly send Victim 1 unsolicited messages.  (Id.) When Victim 1 blocked defendant from contacting her from a particular account, defendant would repeatedly create new online accounts to continue sending Victim 1 messages.  (Plea Agreement, Dkt. 39, at 10.)  On March 1, 2019, after Victim 1 sent defendant online messages accusing him of stalking her online for years and asking for defendant to identify himself, defendant sent Victim 1 a series of online messages in which he refused to identify himself and warned her, "Don't Fuckin test me."  (Id.)  Between June 24, 2019 and July 15, 2019, defendant sent Victim 1 several graphic messages via social media in which he insulted Victim 1 and demanded that Victim 1 engage in sex acts with him.  (Id.)  On July 16, 2019, after Victim 1 demanded that defendant stop contacting her, defendant sent Victim 1 numerous, graphic social media messages in which he threatened to kill her and her family if she stopped communicating with him.  (Id.)

Between July 16, 2019 and August 22, 2019, defendant sent numerous unsolicited and graphic messages to Victim 1 demanding that Victim 1 engage in sex acts with him and insulting her when she did not response to his demands.  (Id.)  On August 23, 2019, defendant sent Victim 1 numerous messages demanding that she engage in sex acts with him and threatening to rape her, some of which were accompanied by pictures of a man choking a woman while pointing a gun at her

2

face.  (Id.)  Between August 24, 2019 and November 26, 2019,
defendant sent numerous graphic online messages to Victim 1 demanding
that Victim 1 engage in sex acts with him and insulting her when she
did not.  (Id. at 10-11.)[1]

### B.   Defendant Harassed and Threatened Victim 2

Defendant began contacting Victim 2 online in 2016.  (PSR ¶ 14.)
In 2017, after defendant began sending Victim 2 sexual messages,
Victim 2 blocked defendant and ceased using social media.  In late
2019, Victim 2 returned to social media and defendant began sending
her increasingly harassing and threatening messages.  (Id.)
Specifically, on August 25 and 26, 2019, shortly after Victim 2
reactivated her social media accounts, defendant sent numerous online
messages to Victim 2 telling her that she belonged to him, demanding
that she engage in sex acts with him, and threatening to kill her if
she did not respond to his demands.  Several of those messages were
accompanied by pictures of men assaulting women, choking women, and
holding knives or guns up to women's throats and faces.[2]

### C.   Defendant Promoted Involuntary Celibacy and Male Supremacy Ideology

During the same period while defendant engaged in the harassing
and threatening conduct toward the victims in this case, he also sent
similar threatening messages and pictures to at least six other young
women, and posted numerous messages online promoting his ideology

---

[1] Specific examples of these messages, as well as the
accompanying pictures, are set forth in the Criminal Complaint in
this case.  (See Dkt. 1 ¶¶ 16-31.)

[2] Specific examples of these messages, as well as the
accompanying pictures, are set forth in the Criminal Complaint in
this case.  (See Dkt. 1 ¶¶ 37-40.)

regarding women, often referred to as Involuntary Celibacy, or "Incel" ideology.[3]  (PSR ¶¶ 49-50.)

Specifically, between 2016 and 2019, defendant posted hundreds of public statements on Facebook promoting his views that men should seek to dominate women, consistent with his messages to the two victims in this case.  Examples of such posts include the following:

- September 14, 2017: "The Alpha Rules Sex first then relationship not relationship first then sex.  Don't waste money and time on women who make you wait for sex.  If she makes you wait.  It means you're beta in her mind.  Women who fuck you right away are the ones you want to date and be in a relationship with.  Don't date women who make you wait.  Date women who make you a priority."

- June 9, 2018: "Why are women such narcissists?  You want marriage You want kids You want a ring You want a big wedding You want us to buy the dinner and flowers You want us to hold the door open for you You want chivalry You want us to meet all your needs You want us to be a good dad You want us to empathize and sympathize with you You can never reflect on your wrongs You hold off on sex to get in a relationship (manipulation) You scream and yell when you don't get your way Sounds like slave labor to a narcissist."

- March 28, 2019: "I get pissed when a hot bitch won't fuck me.  So, I ignore her ass for committing a crime against humanity.  It's like unforgiveable and straight diss of disrespect to an Alpha.  So, Ill tell that bitch to get the fuck out of the way (its like you got one chance and you're done hoe).  But also, I ignore ugly bitches

---

[3] Those who adhere to "Incel" ideology, often referred to as "Incels," are individuals who want to have a willing sexual partner but are unable to find one.  (PSR ¶ 49.)  Incel ideology ranges from sad and self-loathing to "absolute hatred" of women.  (Id.)

4

as well, cause they are a crime against humanity as well too. Remember treat all women the same."

- July 31, 2019: "Women have a fantasy of being a stalked, raped, held hostage and murdered They wish they were victims."

- September 1, 2019: "Women's narcissism has been getting out of hand.  They need to be put back in their fucking place.  Fuck women."

- October 4, 2019: "Don't blame the Alpha Badboy when women cry when you try to fuck them . . . they are crying because it's rape to them."

In addition to these statements, defendant frequently promoted content from social media profiles and books known to promote "male supremacist" and Incel ideology, such as @RationalMale, @Red_Pill_Dad, and the Red Pill Handbook.  Among other things, defendant posted statements from these accounts regarding how to "dominate" women.  For example:

- On September 4, 2016, defendant posted a photograph from the Mens Rights Association of America with a photograph of Brock Turner, the former Stanford University student convicted of rape, and the words "We Support Brock Turner."

- On August 15, 2019, defendant posted a photograph of the book "The Rational Male," and wrote, "Become an Alpha . . . Women don't want male provisioning.  They want dominance."

- On October 7 and 9, 2019, defendant posted links to an article from "The Rational Male" called "The Utility of Beta Men," and wrote, "Beta believes his wife is in charge . . . that's why she resents him . . . Alpha He in charge.  Women don't want to be your one.  They want you to alpha up."

### III. ARGUMENT

The government does not object to the USPO's Guidelines calculations and agrees with the USPO's recommendation that the Court vary downward from the Guidelines and impose a sentence of 21 months of imprisonment, followed by three years of supervised release with the terms and conditions recommended by the USPO.  Such a sentence is sufficient but not greater than necessary to accomplish the goals set forth in 18 U.S.C. § 3553(a).

Defendant's criminal conduct was serious, harmful to the victims, and warrants a custodial sentence.  He engaged in a years-long campaign to harass two victims, including a teenage girl.  When the victims asked him to stop, he escalated his harassment and threatened to sexually assault and kill them.  Moreover, his conduct was consistent with and demonstrated his intent to put into action his deep-seated and violent ideology regarding women.  In light of these aggravating factors, a significant custodial sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.  See 18 U.S.C. § 3553(a)(1), (2).

At the same time, defendant's history and characteristics, in particular his significant mental health diagnoses, appear to have played a role in aggravating his criminal conduct.  In particular, although he harassed the two victims for multiple years, his most violent statements and threats occurred primarily during the fall of 2019, when he had stopped taking medications for schizophrenia, experienced hallucinations and paranoid delusions, was twice involuntarily committed to mental health institutions, and eventually became homeless.  (PSR ¶¶ 69, 77, 79.)  Some of his delusions

specifically related to one of the victims in this case.  (Id. ¶ 82.)
While the totality of defendant's conduct demonstrates his specific
intent to live out his ideology and harass and intimidate the
victims, his mental health diagnoses and history are mitigating
factors regarding his personal history and characteristics that weigh
in favor of a term of imprisonment below the Guidelines range, and
imposition of the requested terms and conditions of supervised
release.  See 18 U.S.C. § 3553(a)(1), (2)(d).

Finally, the government's recommended sentence would not create
an unwarranted sentence disparity.  As the USPO noted, the Guidelines
expressly recognize that mental health conditions may warrant a
downward departure to accomplish a specific treatment purpose.  (Dkt.
47 at 8; USSG § 5H1.3.)  Here, the requested downward departure or
variance, accompanied by the significant period and terms and
conditions of supervised release proposed by the USPO, which the
parties largely set forth in the Plea Agreement, (See Dkt. 39 at 2-
5), will help to ensure defendant receives the mental health
treatment that will protect the victims in this case and the general
public from further crimes of defendant.

For these reasons, the government recommends that the Court
impose a sentence of 21 months of imprisonment, to be followed by
three years of supervised release with the terms set forth by the
USPO.  Those terms, which the parties largely set forth in the Plea
Agreement, (see Dkt. 39 at 2-5), will help to protect both the
victims and the general public from further crimes of defendant.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests
that the Court impose a sentence of 21 months of imprisonment,

followed by three years of supervised release with the terms and conditions set forth by the USPO, and a mandatory special assessment of $200.